```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

NUHA SAABIRAAH EL,                  :

                Plaintiff,          :    04 Civ. 1591 (LMM)

        - against -                 :    MEMORANDUM AND ORDER

THE CITY OF NEW YORK, NEW YORK CITY :
DEPARTMENT OF CORRECTIONS, MICHAEL
CARUSO, individually and as         :
Inspector General of the New York
City Department of Investigations,  :
NICHOLAS KAISER, individually and
as Attorney for the DOC Office of   :
Trials and Litigation, and
BERNARD B. KERIK, individually and  :
as Commissioner of the New York
City Department of Corrections,     :

                Defendants.         :

------------------------------------x
```

McKENNA, D.J.,

1.

Plaintiff, a former employee of the New York City Department of Corrections ("DOC") and a member of the Moorish-American religious faith, brings this action under 42 U.S.C. § 1983 against the City of New York, the DOC, Michael Caruso, at the relevant time an employee of the New York City Department of Investigation and Inspector General for the DOC, Nicholas Kaiser, at the relevant time an employee of the DOC and an attorney in the Office of Trials and Litigation, and Bernard B. Kerik, at the relevant time the Commissioner of DOC, asserting claims, arising out of facts leading up to the termination of her employment on or

about December 18, 1998, for (i) the violation of her right to freedom of association, under the First Amendment to the United States Constitution (Count I), (ii) the violation of her right to due process of law, under the Fourteenth Amendment to the United States Constitution (Counts II, III & IV), and (iii) discrimination in the terms and conditions of her employment, in violation of 42 U.S.C. § 1981 (Count V).[1]

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) & (6) on the grounds that (1) plaintiff's claims are barred by the doctrine of res judicata, (2) plaintiff is collaterally estopped on certain issues, (3) plaintiff's claims are barred by limitations, (4) the individual defendants are entitled to immunity, and (5) as far as plaintiff is challenging the termination of her employment and seeking reinstatement, that claim must be brought in a state Article 78 proceeding (and is barred by limitations).

"Dismissal is proper only if, after accepting all the allegations in the Complaint as true and drawing all reasonable inferences in [plaintiff's] favor, the Complaint fails to allege any set of facts that would entitle [her] to relief." Caiola v.

---

[1] The fifth count is inadvertently numbered III, but the Court will identify it as V.
  While the complaint refers to the Constitution of New York and supplemental jurisdiction over plaintiff's state law claims (Comp. ¶¶ 1 & 2), it does not assert any claim under that constitution or under any other New York law. The Court accordingly does not consider the asserted ground for dismissal of state law claims, i.e., that a notice of claim has not been filed.

Citibank, N.A., New York, 295 F.3d 312, 321 (2d Cir. 2002) (citation omitted).  On a motion under Rule 12, the Court may consider documents attached to the complaint or incorporated in it by reference, or a document relied on in the complaint to a degree that renders the document integral to it.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

**2.**

Plaintiff brought an action in this Court in 2000 arising out of the same termination of her employment by DOC.  El v. City of New York, et al. (00 Civ. 8979 (LMM)) ("2000 Action").  The defendants named in the first amended complaint in the 2000 Action were The City of New York, Department of Corrections, Bernard B. Kerik, Commissioner of the DOC, David Shoenfeld, Warden of the DOC Rikers Island Security Unit, Anthony Serra, his successor, Edward Kurinsky, Commissioner of Investigation of the City of New York, and Rosemarie Maldonado, Administrative Law Judge of the Office of Administrative Trials and Hearings.  Caruso and Kaiser were not named as defendants.

In a Memorandum and Order dated June 18, 2002, this Court granted summary judgment in favor of defendants, dismissing the amended complaint in the 2000 action.  (Gill Decl., Apr. 15, 2004, Exs. 2 (Memorandum and Order) & 5 (first amended complaint)) ("2002 Decision").  On March 26, 2004, the Court denied plaintiff's motions for reconsideration.  In an unpublished summary order filed

on March 14, 2005 (mandate July 15, 2005), the Court of Appeals affirmed the grant of summary judgment and dismissal of the complaint.[2]

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in the action." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-87 (2d Cir. 2002) (citation omitted).[3]  "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence.  Res judicata applies even where new claims are based on newly discovered evidence, unless 'the evidence was either fraudulently concealed or it could not have been discovered with due diligence.'" L-Tee Electronics Corp. v. Cougar Electronic Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999) (quoting Saud v. Bank of New York, 929 F.2d 916, 920 (2d Cir. 1991)) (other citations omitted).

> Whether a claim that was not raised in the previous action could have been raised therein "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."

---

[2] The present motion was briefed prior to the Court of Appeals' affirmance.

[3] Federal law is applied in determining the effect of a federal judgment. Marvel, 310 F.3d at 286 (citation omitted).

Marvel, 310 F.3d at 287 (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992)).

> To determine whether two actions arise from the same transaction or claim, "we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

Id. (quoting Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001)).

The first amended complaint in the 2000 Action, brought under 42 U.S.C. § 1983 and state law, asserted claims, arising out of facts leading up to the termination of plaintiff's employment on or about December 18, 1998, for (i) violation of her right to the free exercise of her religion, under the Free Exercise clause of the First Amendment to the Constitution of the United States (Count I), (ii) violation of her right to be free of defendants' inquiry into the truth or falsity of her religion, under the Establishment clause of the First Amendment to the Constitution of the United States (Count II), (iii) violation of her right to free speech and association, under the First Amendment to the Constitution of the United States (Count III), (iv) violation of her right to the equal protection of the laws, under the Fourteenth Amendment to the Constitution of the United States (Count IV), (v) violation of her right to seek judicial relief, under the First Amendment to the Constitution of the United States (Count V), (vi) employment discrimination, under the New York State Human Rights Law (Count

VI), (vii) employment discrimination, under the New York City Human Rights Law (Count VII), and (viii) termination of her employment in violation of 42 U.S.C. § 1981 (Count VIII).

While the complaint in the present Action and the amended complaint in the 2000 Action both arise out of the termination of plaintiff's employment by DOC and allege many of the same facts leading up to that termination, the complaint in the present action also alleges some facts that the amended complaint in the 2000 Action does not.  As summarized by plaintiff:

> The facts essential to this action were not present in the first case.  Specifically, during her summary suspension, modified duty placement, during her administrative trial process and during her Civil Service Appeal, the defendants concealed from Ms. El the fact that a motivating factor in the decision to subject her to these adverse actions was her association with the Moorish American faith.  The defendants concealed from Ms. El the fact that they considered her a security threat based upon "intelligence" received from the NYPD involving an unnamed, alleged Moorish American. The defendants also concealed from Ms. El the fact that a motivating factor in the decision to subject her to adverse actions was the fact that they believed that she submitted documents to the DOC claiming that she was not subject to arrest and that she was not subject to the jurisdiction of the United States and the State of New York.

(Pl. Mem. at 7 (citations omitted).)  Paragraph 12 of the complaint in the present action alleges that:

> On or about July 12, 1996, defendant Caruso received and read a memorandum from the New York City Police Department (NYPD) claiming, among other things, that an individual involved in a "car stop" was a member of a group known as "The Great Seal Association of Moorish Affairs" and that members of

> that group had been previously arrested and were suspected of armed robberies and trafficking in high-powered automatic weapons.

(Comp. ¶ 12.)  Plaintiff further alleges that:

> In support of the motion for summary judgement [in Kelly v. City of New York (01 Civ. 8906 (TPG))], Michael Caruso submitted a declaration under penalty of perjury dated December 10, 2003. In that affidavit, Caruso declared under penalty of perjury that he and the DOC placed her on modified assignment based on intelligence information provided by the New York City Police Department regarding potential security concerns associated with individuals who were affiliated with the Moorish-National group. Allegedly some members of that group had been suspected of "armed robberies" and "trafficking in high-powered automatic weapons". Defendants concealed the true nature of the charges against plaintiff.

(Id. ¶ 34), and that:

> Caruso's Declaration states that he selected plaintiff for summary suspension, modified duty assignment and recommended her termination for allegedly submitting documents to the DOC claiming that she was not subject to arrest, that she was not subject to the jurisdiction of the United States and the State of New York and that she renounced her United States Citizenship. Defendants concealed the true nature of the charges against plaintiff.

(Id. ¶ 35).

In the 2000 Action, following the grant of summary judgment to defendants and the entry of judgment of dismissal, plaintiff filed two motions for reconsideration, in June of 2002 (Docket No. 27) and, asserting newly discovered evidence, in November of 2002.  (Docket No. 34.)  In the second of these motions (Def. Reply Mem. App. 8), plaintiff asserted that she had

7

"discovered evidence that defendant treated her in a disparate manner because of her membership in the Moorish American faith/organization and because the defendants perceived she was a member of a subversive organization." (Id., Not. of Mot., Nov. 25, 2002, ¶ 2.)  In the supporting declaration of counsel, counsel stated that on October 18, 2002 in a related case (Kelly v. City of New York, 01 Civ. 8906)),[4] she took the deposition of Michael Caruso, who

> testified essentially that at least part of the reason that the plaintiffs were selected for termination was because of their status as Moorish Americans.  Specifically, Mr. Caruso testified that the main issue with the Moorish Americans was with the paperwork that they submitted saying that they were immune from taxation, they had diplomatic immunity towards arrests; and words to the effect that they didn't recognize the Constitution of the United States.

(Id., Thomas Decl., Nov. 25, 2006, ¶ 8.)  "Mr. Caruso further testified," according to counsel, "that some of the 'Moorish Nationals' were placed on modified duty and had their case adjudicated first . . . because of security-related issues," but "that he did not receive any information that Moorish Americans or

---

[4] In addition to the present case, the 2000 Action discussed above, and the Kelly case just cited, there are several other cases related to the present case and each other: Bey v. City of New York, 99 Civ. 3873; Bey v. City of New York, 01 Civ. 9406; and Kelly v. City of New York, 04 Civ. 1572.  All pending cases are now consolidated for pretrial purposes. (See Order, Feb. 22, 2007.)

In the Kelly case to which plaintiff's counsel refers in her declaration, the Court of Appeals, in a summary order, sub. nom. Bey v. City of New York, filed on December 19, 2006 (mandate January 10, 2007), reversed a grant of summary judgment in favor of defendants and remanded the case to the district court for further consistent proceedings.

Moorish Nationals were violent 'that [he] remembered.'"  (<u>Id.</u> (quoting Caruso Dep.).)

Defendants argue, based on the arguments advanced by plaintiff in the second of her motions for reconsideration in the 2000 Action, that "[p]laintiff is now improperly attempting to raise the same exact issues that she raised in her motions for reconsideration, <u>i.e.</u>, that she was subjected to adverse treatment because of her association with the Moorish-American faith, immunity to arrest, intelligence from the NYPD and due to a security concern." (Def. Reply Mem. at 4.)  Since this Court found against plaintiff on her motions for reconsideration, defendants' argument continues, that cannot be relitigated again, here. (<u>Id.</u> at 4-5.)  What is more, according to defendants, <u>res judicata</u> (claim preclusion) applies even though plaintiff "is now asserting an allegedly different factual predicate for her claim because plaintiff cannot demonstrate that she could not have, through diligence, raised these claims in the prior federal action because these facts certainly were available to her" (<u>id.</u> at 6), specifically in the form of the October 2002 Caruso deposition. (<u>Id.</u>)

The Court concludes (although with some reluctance[5]) that

---

[5] The reluctance is the result of the conclusions set forth in the Court of Appeals' 2006 decision in a related case (<u>see</u> n.4, <u>supra</u>), suggesting that the claims of similarly situated plaintiffs -- "the essence of their case is that DOC singled them out for selective enforcement of discipline because of their adherence to the Moorish faith, and that DOC thereby unlawfully discriminated against them on the basis of race or religion, and burdened their right to freedom of association" (<u>Bey v. City of New York</u> (No. 05-5262 cv), Summary Order,

9

defendants are correct, and that the complaint in the present action is barred by the doctrine of res judicata.

Defendants Caruso and Kaiser were not parties to the 2000 Action but, because they were "privies," Marvel, 310 F.3d at 286, of the parties to that action, the doctrine of res judicata requires that the present action be dismissed as to them as well as the other defendants. "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995) (citation omitted). As appears from the complaint in the present action, Caruso and Kaiser were directly involved as City employees in the process leading up to the termination of plaintiff's employment. Plaintiff became specifically aware of the role of Caruso in time to raise it in plaintiff's second motion for reconsideration, if not earlier. The complaint alleges that Caruso and Kaiser were "responsible for drafting the charges against her," and that, during plaintiff's administrative hearing in 1998, the

---

Dec. 19, 2006, at 3-4) -- may well be viable. This Court does not perceive, however, how that case can avoid the application of res judicata in the present case in which this Court's judgment of dismissal has been affirmed.

10

presiding Administrative Law Judge "refused to permit plaintiff to examine these individuals."  (Comp. ¶ 26.)

**3.**

Defendants next argue that the claim of Count V[6] -- that plaintiff suffered from unequal terms and conditions of employment on account of her race, religion, nationality and/or creed, in violation of 42 U.S.C. § 1981 -- is barred by the doctrine of collateral estoppel (issued preclusion), on two grounds:  (i) because she "already had a full and fair opportunity to litigate these claims in her first federal action, and these issues were necessarily decided against her by [the 2002 Decision in the 2000 Action]" (Def. Mem. at 14-15), and (ii) because the termination of plaintiff's employment was affirmed by the New York City Civil Service Commission ("CSC").  (Gill Decl., Apr. 15, 2004, Ex. 3.]) (Id. at 15-16.)

"Collateral estoppel applies when:  "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'"  Marvel, 310 F.3d at 288-89 (quoting Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998)). The requirement that there have been actual litigation and a

---

[6] See n.1, supra.

determination of the issue in question in the earlier case distinguishes collateral estoppel (issue preclusion) from res judicata (claim preclusion). See Lawlor v. National Screen Service Corp., 349 U.S. 322, 326 (1955). In the case of claim preclusion the question is whether the claim could have been raised in the earlier case; in the case of issue preclusion the issue must have not only been raised, but litigated and decided.

Turning first to the argument for collateral estoppel based on the 2002 Decision in the 2000 Action, the Court finds that that decision is not a basis for collateral estoppel in the present case. Here, plaintiff puts forward alleged facts (summarized in her counsel's affidavit quoted supra, at 6) which were not before the Court in the 2000 Action when the 2002 Decision granted defendants summary judgment. Those alleged facts, which plaintiff contends are the basis of her present claim, were not litigated in the 2000 Action nor did the Court's 2002 Decision encompass them nor can a finding that those alleged facts are not true be implied from the 2000 decision. That plaintiff could have raised the issues in question in the 2000 Action does not mean that they were litigated or decided, as required by the collateral estoppel doctrine.

As to the CSC affirmance of the termination of plaintiff's employment (Gill Decl., Apr. 15, 2004, Ex. 3), defendants have not established that the alleged facts on which

12

plaintiff premises the present action were actually litigated and decided in the administrative proceeding which resulted in the termination of plaintiff's employment and in the CSC decision. The findings of the administrative proceeding are set forth in the CSC decision (id. at 3), and plainly do not reflect litigation of plaintiff's present claims.

**4.**

Defendants argue that plaintiff's claims are barred by limitations.

Actions brought under 42 U.S.C. § 1983, as is the present action (see Comp. ¶ 5) are subject to a three-year statute of limitations. Jaghory v. New York State Dept. of Ed., 131 F.3d 326, 331-32 (2d Cir. 1997).[7]  "[T]he statute of limitations begins to run once the plaintiff knows of the injury on which the claim is based." Id. at 331 (citation omitted). Plaintiff's employment was terminated on or about December 18, 1998. The complaint was filed on or about February 25, 2004, over five years later, when, on the face of it, the statute of limitation, whether of three years or of four, had expired.

Plaintiff argues, however, that she "is entitled to the benefit of the equitable tolling doctrine to toll the statute of limitations due to the defendants' fraudulent concealment of the

---

[7] Claims under 42 U.S.C. § 1981 (see Comp. ¶ 49) are subject to a four year limitation period. (See Def. Reply Mem. at 9 n.1, citing Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369 (2004)).

facts giving rise to the claims in this case." (Pl. Mem. at 13.) Specifically, plaintiff claims that "[b]efore her discharge, the sole reason given to Ms. El, in writing, for the adverse actions heaped upon her was (1) that she submitted false tax documents to the DOC with an intent to defraud; and (2) that she submitted documents to the [DOC] in which she renounced her United States citizenship." (Id. (footnote omitted).) "Until her lawyer's receipt of Caruso's December 2003 declaration, Ms. El had no reason to suspect that the defendants orchestrated her discharge simply because she associated herself with the Moorish American faith and because of her right to freedom of speech. She had no reason to suspect that she had not received due process." (Id. at 15.) The Second Circuit

> recognizes an equitable tolling doctrine in the context of § 1983 actions, and when a "defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." To take advantage of this doctrine, however, a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong <u>which precluded his possible discovery of the harms that he suffered</u>.

Pinaud v. County of Suffolk, 52 F.3d 1139, 1157 (2d Cir. 1995) (quoting Keating v. Carey, 706 F.2d 377, 382 (2d Cir. 1983)) (other citation omitted) (emphasis in original). If measured from December 2003, or even October of 2002, when counsel took the

14

deposition of Caruso, the statute of limitations would not have expired when the present action was filed.

The availability of the equitable tolling doctrine because of alleged fraudulent concealment is, clearly, a factual issue which cannot be resolved on a Rule 12 motion without affidavits or deposition testimony.  If the present case were not being dismissed for reasons set forth elsewhere in this Memorandum and Order, the Court would deny defendants' motion for dismissal on the ground of limitations, but with leave to renew after appropriate discovery under Rule 56.

**5.**

Defendants next argue that defendants Kerik and Caruso are entitled to qualified immunity and defendant Kaiser to absolute immunity.

As to Kerik and Caruso, defendants say that plaintiff admitted during the administrative hearing that she claimed false tax exemptions and so "will be unable to demonstrate that Defendants Kerik and Caruso violated a 'clearly established statutory or constitutional right' by find her guilty and terminating her employment, and investigating her for submitting false tax documents and claiming she was not subject to arrest or the jurisdiction of the United States."  (Def. Mem. at 22.)  If those were the only facts before the Court, qualified immunity would very likely be warranted.  However, plaintiff alleges that

the proceeding resulting in the termination of her employment was motivated by religious discrimination, and, if that is the case, it seems very unlikely that qualified immunity would be appropriate.

> Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, but as with all Rule 12(b)(6) motions, the motion may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.

McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (quoting Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1494 (2d Cir. 1992)) (other citation omitted). Here, not only do the facts supporting qualified immunity not appear from the face of the complaint, but the Court is faced with allegations, which must be accepted on the present motion, that suggest that qualified immunity may not be appropriate.

If the present case were not being dismissed for reasons set forth elsewhere in this Memorandum and Order, the Court would deny defendants' motion for dismissal as to Kerik and Caruso, but with leave to renew -- perhaps after "some limited and carefully tailored discovery," Castro v. United States, 34 F.3d 106, 112 (2d Cir. 1994) (citation omitted) -- under Rule 56.

As to defendant Kaiser, plaintiff concedes that his "conduct during the hearings before the Office of Administrative Trials and Hearings Tribunal would qualify him for absolute immunity." (Pl. Mem. at 21, n.8.)  Plaintiff argues that otherwise, and, specifically, in issuing charges and specifications against her because of her association with the Moorish American faith while concealing the true nature of the charges (Pl. Mem. at 21), he is entitled to no immunity.  However, the absolute immunity conferred on prosecutors extends to initiating a prosecution as well as to presenting the case, Pinaud, 52 F.3d at 1147 (citing Burns v. Reed, 500 U.S. 478, 486 (1991)).  That immunity has also been conferred on attorneys prosecuting administrative proceedings. Barrett v. United States, 798 F.2d 565, 572 (2d Cir. 1986). Defendant Kaiser's bringing of charges is within the category of initiating the proceeding.  He is entitled to absolute immunity, and dismissal as to himself.

**6.**

Finally, defendants argue that plaintiff's claim for reinstatement is barred because plaintiff did not challenge her termination in an Article 78 proceeding under New York law. However, "[i]t is well-established that [42 U.S.C.] § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies, or state administrative remedies."  Kraebel v.

17

Dept. of Housing Preservation & Development, 959 F.2d 395, 404 (2d Cir. 1992) (citations omitted). Defendants have not shown that any exception to this rule applies in the present action.

* * *

For the reasons set forth above, defendants' motion is granted to the extent that the action is dismissed as to all defendants as res judicata, and as to defendant Kaiser on the ground that he is absolutely immune, but otherwise denied.

SO ORDERED.

Dated: June 26, 2007

_____
Lawrence M. McKenna
U.S.D.J.